## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

### CASE NO. 12-60683

**JOSH PORTER, INDIVIDUALLY
AND ON BEHALF OF ALL WRONGFUL
DEATH BENEFICIARIES
OF ELIZABETH PORTER**          **APPELLEE/CROSS APPELLANT**

**VS.**

**LOWE'S COMPANIES, INC. BUSINESS
TRAVEL ACCIDENT INSURANCE
PLAN AND GERBER LIFE
INSURANCE COMPANY**          **APPELLANTS/CROSS APPELLEE**

On Appeal from the United States District
Court for the Southern District of Mississippi,
Southern Division, C.A. No. 1:11CV258

### BRIEF OF APPELLEE / CROSS APPELLANTS

W. Thomas McCraney, III (MSB #10171)
Sean R. Guy (MSB #100362)
MCCRANEY MONTAGNET QUIN & NOBLE, PLLC
602 Steed Road, Suite 200
Ridgeland, MS 39157
Telephone:  (601) 707-5725
Facsimile:   (601) 510-2939

**ATTORNEYS FOR APPELLEE/
CROSS APPELLANT**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

### CASE NO. 12-60683

| | |
|---|---|
| **JOSH PORTER, INDIVIDUALLY AND ON BEHALF OF ALL WRONGFUL DEATH BENEFICIARIES OF ELIZABETH PORTER** | **APPELLEE/ CROSS APPELLANT** |

**VS.**

| | |
|---|---|
| **LOWE'S COMPANIES, INC. BUSINESS TRAVEL ACCIDENT INSURANCE PLAN AND GERBER LIFE INSURANCE COMPANY** | **APPELLANTS/ CROSS APPELLEE** |

## CERTIFICATE OF INTERESTED PARTIES

The undersigned counsel of record for Appellee/Cross Appellant, W. Thomas McCraney, III, certifies that the following listed persons have an interest in the outcome of this case. These representations are made in order that the Justices of this Court may evaluate possible disqualification or recusal:

1. Josh Porter, Appellee/Cross Appellant;

2. W. Thomas McCraney, III, Sean R. Guy, attorneys of record for Appellee/Cross Appellant, Josh Porter;

3. Lowe's Companies, Inc.'s Travel Accident Insurance Plan, Appellant/Cross Appellee;

4. Gerber Life Insurance Company, Appellant/Cross Appellee;

5. Luther T. Munford, Thear T. Lemoine, attorneys of record for Appellants/Cross Appellees; and

6.    Anna M. Martin, Joseph M. Rimac, attorneys of record for Appellants/Cross Appellees.

SO CERTIFIED this the 21st day of March, 2013.

JOSEH PORTER, *et al.*


*s/ W. Thomas McCraney, III*
Counsel for Appellee/Cross Appellant

## **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PARTIES ................................................... ii-iii

TABLE OF CONTENTS .......................................................................... iv

TABLE OF AUTHORITIES ............................................................. v-vi

STATEMENT REGARDING ORAL ARGUMENT ............................................. 1

STATEMENT OF JURISDICTION ....................................................... 2

STATEMENT OF THE ISSUES ON APPEAL ........................................... 3

STATEMENT OF THE CASE ......................................................... 4-6

STATEMENT OF RELEVANT FACTS ........................................... 7-9

SUMMARY OF THE ARGUMENT .................................................. 10

ARGUMENT ................................................................... 11-33

    A.    Standard of Review .................................................... 11

    B.    The District Court's Decision to Award Benefits
        should be Affirmed .................................................. 11-19

    C.    Gerber and the Plan have Waived any Argument
        The District Court's Decision Should be Reversed
        on "Additional Grounds" .......................................... 20-30

    D.    The District Court's Computation of Prejudgment
        Interest should be Affirmed ....................................... 30-32

    E.    Attorney's Fees and Costs should be Awarded to Porter ............. 32-33

CONCLUSION ................................................................... 34

CERTIFICATE OF SERVICE .................................................... 35

CERTIFICATE OF COMPLIANCE ............................................... 36

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*CIGNA Corp. v. Amara*, 131 S.Ct. 1866, 1877 (2011) ..........................................16

*Cottrill v. Sparrow, Johnson & Ursillo*, 100 F.3d 220 (1st Cir. 1996) ...................31

*Crowell v. Shell Oil Co.*, 541 F.3d 295, 312 (5th Cir. 2008)............................ 11-12

*Duffer v. Am. Home Assurance Co.,* 512 F.2d 793, 797 (5th Cir. 1995) ................17

*Ellis v. Liberty Life Assurance Co. of Bos.,* 394 F.3d 262, 273 (5th Cir. 2004).......11

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).........................11

*Ford v. Uniroyal Pension Plan*, 154 F.3d 613 (6th Cir. 1998)...............................31

*Fruge v. Amerisure Mutual Ins. Co.*, 663 F.3d 743 (5th Cir. 2011) .................. 26-27

*Glista v. Unum Life Ins. Co.,* 378 F.3d 113, 130 (1st Cir. 2004) ...........21, 23, 25-26

*Hansen v. Continental Ins. Co.,* 940 F.2d 971, 984 n.11 (5th Cir. 1991) .......... 31-32

*High v. E-Systems, Inc.* 459 F.3d 573, 578-79 (5th Cir. 2006)...............................13

*Holland v. Int'l Paper Co. Retirement Plan,*
576 F.3d 240, 246 (5th Cir. 2009) ............................................................11-12, 18

*Jones v. Georgia-Pacific Corp.*, 90 F.3d 114, 116 (5th Cir. 1996) .................14, 17

*Lane v. Hartson-Kennedy Cabinet Co.*, 981 So. 2d 1063,
1067-68 (Miss. Ct. App. 2008) ...........................................................................15

*Lauder v. First Unum Life Ins. Co.*, 284 F.3d 375 (2d Cir. 2002).........................23

*Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322 (8th Cir. 1995) ...............................31

*Marolt v. Alliant Techsystem, Inc.*, 146 F.3d 617 (8th Cir. 1998) .................... 22-23

*Pitts v. American Security Life Ins. Co.*, 931 F.2d 351, 357 (5th Cir. 1991) ..... 25-26

*Pylant v. Hartford Life and Accident Ins. Co.*,
497 F.3d 536, 540 (5th Cir. 2007) ...........................................................12

*Robinson v. Aetna Life Ins. Co.,* 443 F.3d 389, 393 (5th Cir. 2006) ......21, 25, 28-29

*Rossi v. Precision Drilling Oilfield Svc. Corp. Employee
Benefits Plan*, 704 F.3d 362, 365 (5th Cir. 2013) ....................................22

*Todd v. AIG Life Ins. Co.,* 47 F.3d 1448, 1451 (5th Cir. 1995)............................13

*United Paperworkers Int'l Union v. Champio Int'l Corp.*,
908 F.2d 1252, 1255-56 (5th Cir. 1990) ..................................................14

*United States, ex rel Canion v. Randall & Blake*,
817 F.2d 1188 (5th Cir. 1987)..................................................................32

*Vega v. Gasper,* 36 F.3d 417, 426 (5th Cir. 1994)..................................................15

*Vega v. Nat'l Life Ins. Co.,* 188 F.3d 287, 299 (5th Cir. 1999) ..............................28

*Wildbur v. ARCO Chemical Co.*, 974 F.2d 631 (5th Cir. 1992)................ 12, 16, 18

**Other**

28 U.S.C. § 1291..........................................................................................2

28 U.S.C. § 1331..........................................................................................2

28 U.S.C. § 1961........................................................................................32

29 C.F.R. § 785.35 ......................................................................................15

29 U.S.C. §§ 1001 – 1461 ............................................................................2

29 U.S.C. § 1132...................................................................................24, 31

29 U.S.C. § 1133...................................................................................21-22, 24

Miss. Code Ann. § 75-17-1 .................................................................6, 30-31

## STATEMENT REGARDING ORAL ARGUMENT

Appellee/Cross-Appellant respectfully submits that oral argument would not assist in the decisional process as the issues are straight-forward and adequately presented in the briefs of the parties.

## STATEMENT OF JURISDICTION

This appeal and cross-appeal relate to an action brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 – 1461, by Josh Porter ("Porter") against the Lowe's Companies, Inc. Business Travel Accident Plan ("the Plan") and the insurer of the Plan, Gerber Life Insurance Company ("Gerber"). The District Court had subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1332 (diversity of citizenship). This Court has jurisdiction over the appeal and cross-appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES ON APPEAL

The primary issue on appeal is whether the District Court erred in granting summary judgment in Porter's favor and awarding him a judgment against the Plan and Gerber for Plan benefits and prejudgment interest. The issue on Porter's cross-appeal is whether the District Court erred in denying attorneys' fees and costs as part of the relief awarded under ERISA.

## STATEMENT OF THE CASE

Porter's deceased wife, Elizabeth Porter ("Elizabeth"), was employed as a manager at the Lowe's home improvement store in Waveland, Mississippi. As an employee of Lowe's, Elizabeth was a participant in the Plan.

Elizabeth was tragically killed as a result of an automobile accident that occurred on February 24, 2008.[1] Elizabeth was pregnant at the time of the accident, and her unborn child was also killed.

On the day of the accident, Elizabeth filled in for another employee and worked a regular shift at Lowe's as the manager on duty. After closing the store at the end of the day, Elizabeth left work and proceeded to drive home. At some point thereafter, Elizabeth received a telephone call from a security company advising that an alarm had sounded at the Lowe's store. Elizabeth was one of three employees on the Lowe's call-list who were responsible for responding to alarms at the store after hours. At some point after receiving the call, Elizabeth altered her route in order to return to the Lowe's store for the purpose of responding to the alarm. En route, Elizabeth's vehicle was struck head-on by another motorist.

After Elizabeth's death, Porter filed a timely claim under the Plan, which provides for certain benefits for injuries sustained by a participant while on a

---

[1] In its brief, Gerber incorrectly states that the date of the accident was February 28, 2008.

"bonafide" business trip.[2]  The Plan Administrator, A.C. Newman & Company, Inc., investigated Porter's claim and ultimately determined that benefits were not owed under the Plan.[3]  The Plan Administrator determined that Elizabeth was not on a "bonafide trip" within the meaning of the Plan because this particular provision excludes coverage for an injury sustained "during travel to and from work."  The Plan Administrator interpreted this provision to preclude coverage because at the time of the accident Elizabeth was travelling to the Lowe's store to perform a work-related task (*i.e.* responding to the alarm).

After exhausting the administrative claim process, Porter filed suit in the District Court, seeking all available relief under ERISA.  CTA5 9.  Thereafter, the parties filed cross-motions for summary judgment based on the administrative record. CTA5 62; CTA5 128.

On July 31, 2012, the District Court issued a Memorandum Opinion and Order, denying the Plan and Gerber's motion for summary judgment and granting Porter's motion for summary judgment.  CTA5 274.  The District Court found that the Plan Administrator had interpreted the "travel to work" exclusion in a "legally incorrect" manner and that it had abused its discretion in denying Porter's claim for benefits.  In accordance with its Memorandum Opinion and Order, the District

---

[2] There is no dispute that Porter has standing to pursue this claim under the Plan
[3] A.C. Newman & Company, Inc. was dismissed as a separate party defendant in the proceedings below based upon Gerber's stipulation that, as the insurer of the Plan, it would be ultimately responsible for any judgment rendered herein. *See* Appellants' Br. at 8.

Court entered a Judgment in Porter's favor for $181,830.37, representing the principal amount of benefits owed under the Plan, plus prejudgment interest. The District Court denied Porter's request for attorney's fees and costs. CTA5 290.

Because the District Court did not specify an amount for prejudgment interest, Porter filed a Motion to Alter or Amend the Judgment. CTA5 292. Porter requested the District Court to exercise its discretion and to award prejudgment interest at a rate of 8% based upon Miss. Code Ann. § 75-17-1, which establishes the legal rate of interest on contracts in Mississippi. On August 20, 2012, the District Court entered an Amended Judgment, awarding Porter benefits under the Plan in the amount of $181,830.37, plus prejudgment interest at a rate of 8% in the amount of $61,769.30. CTA5 300. By Order dated September 11, 2012, the District Court denied the Plan and Gerber's Motion for Reconsideration regarding the computation of prejudgment interest. CTA5 342. Thereafter, the parties timely perfected this appeal and cross-appeal.

# STATEMENT OF RELEVANT FACTS[4]

It is undisputed that Elizabeth was killed as a result of a motor vehicle accident which occurred while she was driving to the Lowe's store after-hours to respond to an alarm call.  As an employee of Lowe's, Elizabeth was a participant in Group Accident Policy Number BTA-10369, which is an ERISA-governed welfare benefit plan sponsored by Lowe's and insured by Gerber. *See* Appellants' R.E. Tab 9.  After Elizabeth's death, Porter filed a timely claim for benefits under the Plan.

The specific coverage provision relied upon by the Plan Administrator in denying benefits provides as follows:  **"coverage will apply to an Injury sustained by an Insured Person when on Business for the Policyholder during any bonafide trip."** [5]   It is undisputed that Elizabeth sustained an "Injury" and that, at the time of the accident, she was as an "Insured Person" as those terms of defined by the Plan.  The term "Policyholder" refers to Lowe's.

In reviewing Porter's claim, the Plan Administrator exchanged communications with Lowe's regarding the accident and Elizabeth's employment activities at that time.  Lowe's informed the Plan Administrator via an email dated

---

[4]This Statement of Relevant Facts is based on the Administrative Record and the pleadings on file with the District Court.
[5]*See* Appellants' R.E. at Tab 9.  This coverage provision applies to the "covered hazards" set forth in the Plan.  Elizabeth was eligible for coverage under Hazard 9 (All Risk Accident Protection), Hazard 25 (Automobile Seat Accident Belt Protection) and Hazard 28 (Private Passenger Automobile Air Bag Accident Protection).

July 22, 2008, that Elizabeth was on a "special errand" at the time of the accident and that she was responding to an alarm at the store as part of her normal job duties.[6]

On October 22, 2008, the Plan Administrator issued its initial decision. The Plan Administrator denied Porter's claim on the ground that Elizabeth's accident did not occur "when on Business for the Policyholder during a bonafide trip" as required by the Plan. Appellants' R.E. Tab 10. The Plan defines the term "bonafide trip" as: "A trip made in good faith and authorized by the Policyholder for the purpose of furthering the business of the Policyholder." The Plan defines "when on business for the Policyholder" as: "Furthering the business of the Policyholder. **This does not include an Injury sustained during travel to and from work . . ..**" *Id.* In its denial letter, the Plan Administrator provided the following rationale for its decision based on this provision:

> According to information supplied by Lowe's, at the time of the motor vehicle crash, [Elizabeth] was responding to an alarm call as part of her regular job duties. Under the express terms of the Plan, "When on Business for the Policyholder" is defined as "Furthering the business of the Policyholder. This does not include an Injury sustained during travel to and from work . . .." At the time of the motor vehicle crash,

---

[6] CTA5 85. Because Elizabeth was on a "special errand" for Lowe's, as opposed to her normal commute to and from work, Porter's claim for workers' compensation death benefits was accepted as fully compensable. Elizabeth's written job description did not specifically mention responding to alarms after hours as part of her responsibilities. However, Lowe's informed the Plan Administrator that this task was within the scope of her general job duties as a manager and that she was one of three employees on the alarm-call list. *See* CTA5 89-95.

> [Elizabeth] was traveling to work to perform her regular job duties,
> thus, she was not on Business for the Policyholder during any
> bonafide trip . . ..

Appellants' R.E. at Tab 10.  The Plan Administrator did not mention in its intial

denial letter the information conveyed by Lowe's (the Policyholder) that Elizabeth

was on a "special errand" at the time of the accident. [7]

Porter timely appealed the Plan Administrator's initial decision.  On June 23,

2009, the Plan Administrator issued its decision on appeal, which upheld the initial

denial.   Although worded in a slightly different manner, the rationale for the

decision on appeal was exactly the same as the initial denial:

> According to information supplied by Lowe's, at the time of the motor
> vehicle crash, [Elizabeth] was responding to an alarm call as part of
> her regular job duties, and was in the process of driving to her regular
> employment to perform those regular job duties.  At the time of the
> car crash [Elizabeth] was not on a "bonafide trip" but was simply
> traveling to her place of regular employment to perform her regular
> job duties. Furthermore, the definition of "When on Business for the
> Policyholder" specifically "does not include an Injury sustained
> during travel to . . . work . . .."  As under the express terms of the
> Policy, [Elizabeth], at the time of the fatal car crash, was not on
> business for the Policyholder (as she was traveling to work), and was
> not on a bonafide trip, these claim are not covered under the policy.

Appellants' R.E. at Tab 11.  Again, the Plan Administrator did not mention the

information conveyed by Lowe's that Elizabeth was on a "special errand" at the

time of the accident.

---

[7]The Plan Administrator's denial letter suggested that its first communication with
Lowe's about the accident was via email dated August 5, 2008, when in fact, it had
actually received a prior email from Lowe's dated July 22, 2008, that Elizabeth
was on a "special errand."  *Compare* Appellants' R.E. at Tab 10 *with* CTA5 85.

## SUMMARY OF THE ARGUMENT

This Court should affirm the District Court's summary judgment which awarded Plan benefits to Porter. The District Court correctly determined that the Plan Administrator abused its discretion in denying Porter's claim because its decision was based on a legally incorrect interpretation of the Plan and not supported by substantial evidence. This Court should preclude Gerber and the Plan from asserting in desperation an "additional ground" for reversal was not raised during the administrative claim process or before the District Court.

This Court should likewise affirm the District Court's award of prejudgment interest to Porter. The District Court properly exercised its discretion in accordance with this Court's precedent and fairly applied a reasonable rate of interest based on applicable state law.

Lastly, this Court should reverse the District Court's decision to deny attorney's fees and costs to Porter and remand this discrete issue for further consideration. Porter fully recognizes that such an award is discretionary under ERISA. However, the circumstances of this case warrant the assessment of attorney's fees and costs against Gerber and the Plan as a deterrent and because there is *indicia* of bad faith. This is particularly true, considering the fact that Gerber and the Plan have frivolously pressed an issue on appeal which has been clearly waived.

# ARGUMENT

### A.    Standard of Review

This Court reviews *de novo* the District Court's summary judgment awarding benefits. *Crowell v. Shell Oil Co.*, 541 F.3d 295, 312 (5th Cir. 2008). Under the *de novo* standard of review, this Court applies the same standard to the Plan Administrator's decision as the District Court did below, and should affirm the District Court if the Plan Administrator abused its discretion in denying benefits to Porter. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Holland v. Int'l Paper Co. Retirement Plan,* 576 F.3d 240, 246 (5th Cir. 2009).

A plan administrator abuses its discretion when its decision is not supported by substantial evidence, and therefore, arbitrary and capricious. *Ellis v. Liberty Life Assurance Co. of Bos.*, 394 F.3d 262, 273 (5th Cir. 2004). "Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* A decision is arbitrary if made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Holland*, 576 F.3d at 246.

### B.    The District Court's Decision to Award Benefits Should be Affirmed

In its Memorandum Opinion and Order dated July 31, 2012, the District Court found that: "It is clear . . . that the Administrator's decision rested on two primary facts:  that Elizabeth's regular job duties involved responding to alarms

and that she was traveling to her regular place of employment." CTA5 281.  The Court also found that: "The specific exclusion on which Defendants base their case is travel to and from work."  CTA5 282.  Gerber and the Plan do not challenge these findings on appeal but contend that the District Court failed to give adequate deference to the Plan Administrator's decision under the abuse of discretion standard.

As the District Court correctly noted, this Court typically utilizes a two-step inquiry to determine whether an administrator abused its discretion in construing plan terms. *See Wildbur v. ARCO Chemical Co.*, 974 F.2d 631 (5th Cir. 1992). The first step is to determine whether the plan administrator's interpretation is "legally correct."  If so, there is no abuse of discretion and the inquiry ends. However, if the plan administrator has not given the plan a legally correct interpretation, then the court must determine whether the interpretation constitutes an abuse of discretion. *Holland*, 576 F.3d at 246 n.2; *Pylant v. Hartford Life and Accident Ins. Co.*, 497 F.3d 536, 540 (5th Cir. 2007).

To determine whether a plan administrator's interpretation is "legally correct," the court should consider three factors:  (1) whether the administrator has given the plan a uniform construction; (2) whether the interpretation is consistent with a fair reading on the plan; and (3) any unanticipated costs.  *Crowell*, 541 F.3d at 312. The second factor is the most important.  *Id.* Although a plan administrator has the discretion to interpret plan terms, and to resolve ambiguities in its favor, its

interpretation must be objectively reasonable and consistent with a fair reading of the plan. *See High v. E-Systems, Inc*. 459 F.3d 573, 578-79 (5th Cir. 2006).

The District Court held that the Plan Administrator's interpretation of the "travel to work" exclusion was not based upon a fair reading of the plan, and therefore, legally incorrect.[8]   Gerber and the Plan argue that this provision is "unambiguous" and that, in denying Porter's claim for benefits, the Plan Administrator construed it according to its "common sense meaning."   Appellants' Br. at 23, 25.   Gerber and the Plan complain that the District Court disregarded the Plan Administrator's "reasonable" interpretation and proceeded to re-write the provision "to reach its intended goal of paying benefits to Mr. Porter."   *Id*. at 18. Not only is this argument callous and offensive, it is simply wrong.

Federal common law governs the construction of ERISA plans. *Todd v. AIG Life Ins. Co.,* 47 F.3d 1448, 1451 (5th Cir. 1995).   In construing such plans, courts are to look to the "ordinary and popular sense" of the term "as would a person of average intelligence and experience." *Todd*, 47 F.3d at 1452, n.1.   Language in an insurance contract is given "its ordinary and generally accepted meaning" if one exists. *Id.*

---

[8] The District Court's opinion contains an obvious typographical error where it mistakenly states in conclusion that: "A.C. Newman's interpretation was not a fair reading of the Plan, and therefore, it was not legally ***incorrect.***"   USCA5 284.   The District Court obviously meant to say that the interpretation ***was*** legally incorrect.

A contract is ambiguous when "it is reasonably susceptible to more than one meaning" after established rules of construction have been applied. *United Paperworkers Int'l Union v. Champion Int'l Corp.*, 908 F.2d 1252, 1255-56 (5th Cir. 1990). If a court finds the contract to be ambiguous, the determination of the parties' intent becomes a question of fact and extrinsic evidence of intent may be introduced. *Id.* Under the rule of *contra proferentum*, courts must construe plan terms in favor of the insured when such terms remain ambiguous after ordinary principles of contract interpretation have been applied. *Jones v. Georgia-Pacific Corp.,* 90 F.3d 114, 116 (5th Cir. 1996).

It is important to note that the Plan does not expressly define the phrase "travel to or from work" or the term "to work." *See* CTA5 286. In the employment setting, the term "work" is commonly understood to have several different meanings, depending on the context in which it is used. For example, the term "work" can be used as a noun to describe a general occupation, a specific job-related activity, or a physical job-site. It can be also used as a verb to describe the act of working or performing work-related activities.[9]

The Plan Administrator interpreted the "travel to work" provision to exclude coverage where an employee is travelling "to work," that is, travelling to perform

---

[9] *See* Merriam-Webster, On-line Dictionary. Gerber and the Plan argue throughout their brief that it is "undisputed" that Elizabeth was travelling "to work" at the time of the accident. These statements are a mischaracterization because the Plan and Gerber use a legally incorrect interpretation of the phrase "travelling to work." The undisputed fact is that Elizabeth was travelling to Lowe's on a special errand.

job-related activities and/or traveling to her regular job-site.  However, as the District Court correctly noted, the phrase "travel to and from work" has its own commonly understood meaning and legal application which refers to the ordinary daily commute between an employee's home and her job-site.

It is commonly understood that time spent by an employee traveling to and from work as part of the daily commute is not considered work-time because this activity is not in furtherance of the employer's business.  This is the general rule for purposes of the Fair Labor Standards Act[10] as well as state workers' compensation laws which exclude coverage for injuries occurring during the ordinary commute.[11]

As the District Court recognized, when an employee is on a "special errand" for her employer, she is considered to be working and not merely "traveling to or from work" (*i.e.* commuting).[12]  This is precisely why the workers' compensation carrier accepted the claim for Elizabeth's death as compensable.  Lowe's specifically informed the Plan Administrator that Elizabeth was on a "special errand" at the time of the accident in responding to the alarm call.  CTA5 85.

---

[10] *See Vega v. Gasper,* 36 F.3d 417, 426 (5th Cir. 1994) (stating that normal travel between home and work is not "work time" for purposes of FLSA);  *see also* 29 C.F.R. § 785.35.

[11] *See Lane v. Hartson-Kennedy Cabinet Co.*, 981 So. 2d 1063, 1067-68 (Miss. Ct. App. 2008)(stating "There is a long-standing rule in the law of workers compensation that in the case of an employee having a fixed place of employment, the employee and not the employer assumes the hazards associated with going to and from the place of employment.").

[12] *See* listing of cases cited in Porter's summary judgment brief.  CTA5 117-18.

Nevertheless, the Plan Administrator ignored this commonly understood and legally correct interpretation of the phrase "travel to work" and instead interpreted the Plan in an unreasonable and nonsensical manner so as to deny benefits.

Because it has a specific legal and commonly understood meaning, the District Court correctly determined that "the only fair construction to put on the phrase 'travel to and from work' is travel in the ordinary daily commute." CTA5 282. Gerber and the Plan complain that the District Court reached this conclusion by improperly re-writing the Plan and "adding a slew of words to an already plain definition." Appellants' Br. at 22. This argument is completely without merit.

In construing the "legally correct" meaning of this phrase, it was entirely proper for the District Court to "look outside the plan's written language" and consider other sources and legal authorities for guidance. *See CIGNA Corp. v. Amara*, 131 S.Ct. 1866, 1877 (2011). In cases where an ERISA plan provision is susceptible to more than one meaning, the court is permitted to consider extrinsic circumstances to aid in its construction. *See Wildbur*, 974 F.2d at 642 (holding that the District Court may consider evidence outside of the administrative record in determining whether a Plan Administrator gave the plan a legally correct interpretation."). Here, the District Court did not "rewrite" the Plan; it simply consulted other relevant sources for guidance in determining "the meaning

commonly ascribed to this type of exclusion."[13]   This exercise was a proper

application of the federal common law by the District Court to an issue of ERISA

plan interpretation.[14]

Moreover, the District Court's analysis did not end with its consideration of

extrinsic sources. The District Court also examined whether the Plan

Administrator's interpretation comported with a fair reading of the Plan as a whole.

The Plan Administrator relied upon two facts to disqualify Elizabeth from

coverage under its interpretation of the "travel to work" exclusion: (1) the fact that

she was performing a regular job duty in responding to the alarm call; and (2) the

fact that she was traveling to her regular place of employment. CTA5 281.  The

District Court found that the Plan Administrator's reliance on these facts to deny

coverage did not comport with a fair reading of the Plan.

According to the Plan a "bonafide" business trip is covered only if it is in

furtherance of the employer's business (i.e. work-related).  Moreover, the Plan

specifically contemplates that such a trip may end when the Employee returns to

her "place of regular employment." Based on this Plan language, the District Court

correctly observed that "the Plan obviously covers employees who travel as part of

---

[13] For interpretive guidance, the District Court consulted a well-known treatise on insurance law, as well as various cases in which similar "travel to work" exclusions were examined, including this Court's decision in *Duffer v. Am. Home Assurance Co.,* 512 F.2d 793, 797 (5th Cir. 1995).

[14] To the extent that the legally correct meaning of the phrase "travel to and from work" is ambiguous (which it is not), this ambiguity must be resolved in Porter's favor under the rule of *contra proferentum. See Jones,* 90 F.3d at 116.

their 'normal job duties'" and does not "exclude[] trips made to the employee's regular place of business." CTA5 281-82. In reaching its conclusion, the District Court found that the Plan Administrator's interpretation did not comport with a fair reading of the policy because, if applied uniformly, it would effectively preclude coverage for any business trip that: (1) involved the performance of regular job duties; and/or (2) involved travel to the employee's regular place of employment. Such a result would clearly not be consistent with the overall purpose of the Plan. Thus, the District Court correctly determined that the Plan Administrator's interpretation was legally incorrect.

If a court concludes that a plan administrator's interpretation is legally incorrect, then it must also determine whether the plan administrator abused its discretion in denying the claim for benefits. *See Wildbur,* 974 F.2d at 637. Here, the District Court correctly applied the two-step inquiry and held that the evidence could not support a denial if analyzed under the legally correct interpretation of the "travel to work" exclusion. CTA5 284.

A plan administrator abuses its discretion when the evidence does not support its basis for denial. *Holland*, 576 F.3d at 247. The District Court correctly determined that, according to the undisputed facts, Elizabeth was on a special errand at the time of the accident and was not "traveling to work" (*i.e.* commuting) as that that term is commonly understood and legally applied. Because the Plan Administrator's decision lacked any rational connection to the

known facts, it was necessarily an abuse of discretion to deny Porter's claim for benefits.

It is important to note that this is not a case where there are two equally rational interpretations of the Plan, and the Plan Administrator chose one over the other in its discretion. Here, on the one hand, we have the legally correct interpretation as found by the District and on the other hand, we have an interpretation that does not comport with a fair reading of the plan. Moreover, if uniformly implemented, the later interpretation would lead to absurd results, and effectively obliterate the scope of intended courage.

Although the Plan Administrator was provided evidence from Lowe's during the administrative process that Elizabeth was on a special errand, it chose to ignore this and abused its discretion by analyzing the facts under a legally incorrect interpretation of the provision at issue.  The bottom line is that Plan Administrator interpreted the Plan as if a "bonafide trip" required a pre-arranged, out-of-town business excursion, and it simply could not accept the notion that the Plan language provided coverage to Elizabeth's situation.  The Plan certainly could have been drafted more clearly, but the Plan Administrator cannot achieve this end by construing the Plan in a legally incorrect and unreasonable manner.  The District Court's decision that the Plan Administrator abused its discretion in denying Porter's claim for benefits should be affirmed.

**C.     Gerber and the Plan have Waived any Argument that the District Court's Decision should be Reversed on "Additional Grounds"**

As discussed above, the Plan Administrator based its decision to deny benefits solely on the "travel to work" exclusion.   In their summary judgment briefs before the District Court, Gerber and the Plan argued that the Plan Administrator's decision should be upheld because Elizabeth was "traveling to work" when she was killed, and thus, not on a "bonafide trip" as defined by the Plan. To emphasize their position, Gerber and the Plan highlighted this particular Plan provision in bold eleven (11) separate times in their Reply Memorandum to the District Court.  CTA5 259.  This was not lost upon the District Court.  In its Memorandum Opinion and Order, the District Court specifically noted that "[t]he specific exclusion on which [the Plan and Gerber] base their case is "travel to and from work."  USCA5 282.

Now, for the first time on appeal, the Plan and Gerber point to a different Plan provision, which they present as an "additional ground" for reversing the District Court.   Appellants' Br. At 33.   The Plan and Gerber base this newly asserted argument the following provision:

> **Coverage for such trip begins on the later of when an Insured Person leaves his or her place of: (a) residence; or (b) regular employment; for the purpose of going on such trip.**

The Plan and Gerber criticize the District Court for "fail[ing] to address this provision" and for ignoring its "mandate" that a "bonafide" business trip begins

"only" when the insured employee departs from her (a) place of residence or (b) place of employment for the purpose of going on such trip. Appellants' Br. at 35. The Plan and Gerber contend that coverage was never triggered in Elizabeth's case because she did not depart from either location for the purpose of going on a business trip, and thus, the District Court erred in finding that she commenced a business trip when she altered her route to return to the Lowe's store.   This argument is specious because Gerber and the Plan never raised this issue during the administrative process or before the District Court.

This newly asserted argument does not appear anywhere in the Plan Administrator's initial decision or its decision after appeal.[15]  The Plan and Gerber obviously recognize this because they candidly describe this new argument in their appeal brief as a "stand-alone" ground for reversal which this Court should consider "in addition to" the actual rationale articulated by the Plan Administrator. Appellants' Br. at 33.  This is procedurally improper and should be rejected by this Court.

---

[15] The Plan Administrator recited this provision in its initial denial letter and its decision after appeal.  However, the Plan Administrator did not otherwise mention or rely upon this provision in explaining its specific rationale for denying Porter's claim.   *See Robinson v. Aetna Life Ins. Co.,* 443 F.3d 389, 393 (5th Cir. 2006)(rejecting insurer's argument that it "substantially complied" with § 1133 by generally reviewing the ultimate coverage issue because ERISA mandates disclosure of the *specific* rationale for denial).  *Glista v. Unum Life Ins. Co.,* 378 F.3d 113, 130 (1st Cir. 2004)(rejecting argument that a passing reference to a plan provision was sufficient to satisfy § 1133 because the specific rationale for the denial must be articulated to the Claimant.

By raising this argument for the first time on appeal, Gerber and the Plan are in flagrant violation of the procedural dictates of ERISA, 29 U.S.C. § 1133, which pertain to benefit denials. As this Court has recognized:

> Section 1133 and its corresponding regulations require that the Plan: (1) provide adequate notice; (2) in writing; (3) setting forth the specific reasons for such denial; (4) written in a manner calculated to be understood by the participant; and (5) afford a reasonable opportunity for a full and fair review by the administrator. **To comply with the full and fair review requirement in deciding benefit claims under ERISA, a claim administrator must provide the specific grounds for its benefit claim denial.**

*Rossi v. Precision Drilling Oilfield Svc. Corp. Employee Benefits Plan*, 704 F.3d 362, 365 (5th Cir. 2013)(internal citations omitted)(emphasis added).

Here, the Plan Administrator provided the specific ground for denying Porter's claim (*i.e.* the "travel to work" exclusion), but its reasoning did not include this "additional" ground which Gerber and the Plan now assert for the first time on appeal. Allowing the Plan and Gerber to invoke this "additional" ground as a basis for reversal after an adverse judgment would be manifestly unfair and unjust.

Other circuit courts addressing this issue have held that a violation of ERISA's procedural requirements constitutes a waiver of the defense in subsequent litigation. For example, in *Marolt v. Alliant Techsystem, Inc.*, 146 F.3d 617 (8th Cir. 1998), the Eighth Circuit held:

> The fact is, the [plan administrator] did not provide a rationale for its decision. The [plan administrator]'s failure in this regard was

22

contrary to the ERISA statute, federal regulations, and this court's longstanding precedent. **We will not permit ERISA claimants denied the timely and specific explanation to which the law entitles them to be sand-bagged by after-the-fact plan interpretations devised for purposes of litigation.**

*Marolt*, 146 F.3d at 620(internal citations omitted)(emphasis added). Similarly, in *Lauder v. First Unum Life Ins. Co*., 284 F.3d 375 (2d Cir. 2002), the Second Circuit held that an insurer waives defenses to coverage which are not articulated to the insured during the ERISA claims review process where the insurer had sufficient information to investigate and raise those defenses if it had chosen to do so.

The First Circuit considered a closely analogous situation in *Glista v. Unum Life Ins. Co. of America*, 378 F.3d 113 (1st Cir. 2004). *Glista* involved a claim for long-term disability benefits under an ERISA plan. The plan administrator, Unum, denied the claim for benefits based upon a preexisting condition exclusion. The plan included two different clauses to define a "preexisting condition:" a treatment clause and a symptoms clause. According to the Plan, a preexisting condition was present if: (a) the beneficiary actually sought medical treatment for the condition within three (3) months prior to the effective date of coverage; or (b) the beneficiary experienced symptoms associated with such a condition for which a reasonable person would have sought medical treatment within three (3) months prior to the effective date of coverage. *Glista*, 378 F.3d at 116. In communicating

the basis for the denial to the beneficiary, Unum relied only on the "treatment clause." *Id.* at 128.

After denial of his administrative appeal, the beneficiary filed suit under ERISA in district court. Unum moved for summary judgment on the basis that its decision to deny benefits under the "treatment clause" was entitled to deference under the applicable standard of review. Unum also raised an "additional" argument before the district court that benefits were also excluded under the "symptoms" clause. The district court ultimately granted Unum's motion for summary judgment and dismissed the beneficiary's case. *Id.* at 130-31.

On appeal, the First Circuit reversed the district court and rendered judgment in the beneficiary's favor. The Court held that Unum's decision to deny benefits under the treatment clause "was neither reasonable nor supported by the evidence." Citing ERISA, 29 U.S.C. § 1133, and its corresponding regulations, the Court agreed that Unum could not rely on the symptoms clause in support of its benefits denial "because it did not rely on that clause in its communications to him during the internal review process." *Id.*

In fashioning a remedy for Unum's violation of ERISA's procedural requirements, the court looked to the remedial provisions of ERISA, 29 U.S.C. §1132, which authorizes "other appropriate equitable relief." The Court then held as follows:

> Under these circumstances, we think the "appropriate equitable relief" is to hold Unum to the basis that it articulated in its internal claims review process for denying benefits, *i.e.*, the Treatment Clause. We recognize that ERISA trusts plan administrators to make the first determination as to the availability of benefits and thus that remand may be appropriate in some, or even many, cases. But, given the countervailing concerns raised on the facts of this particular case, we do not find that to be the appropriate solution here. Unum failed to raise the Symptoms Clause in the claims review process even though it had the burden, obligation, and opportunity to do so. We simply do not know, had Unum raised the Symptoms Clause, what additional information would have been provided to Unum by Glista or whether Glista would have settled his claim with Unum earlier. In addition to driving up the cost of proceedings, Unum's failure may well have prevented a more efficient resolution of this case.

*Id.* at 132.

The decisions discussed above are consistent with this Court's long-standing precedent recognizing waiver as an applicable doctrine in ERISA cases. *See Pitts v. American Security Life Ins. Co.*, 931 F.2d 351, 357 (5th Cir. 1991)(holding that insurer waived coverage defense by failing to raise it at the outset of the claim); *see also Robinson v. Aetna Life Ins. Co.,* 443 F.3d 389, 393-94 (5th Cir. 2006)(rejecting after-the-fact rationale for denying benefits that insurer did not specifically articulate during claim process). This Court should not permit the Plan and Gerber to sandbag Porter by advancing an after-the-fact plan interpretation devised to avoid an adverse judgment. This situation is even more egregious than in *Glista* because not only did the Plan Administrator fail to raise this "additional" ground

for denial during the administrative process, it also failed to raised this before the District Court.[16]

The failure to raise this argument before the District Court constitutes an additional basis to find that Gerber and the Plan have waived it for appellate purposes. In *Fruge v. Amerisure Mutual Ins. Co.*, 663 F.3d 743 (5th Cir. 2011), an insurance coverage dispute arose out of an oil field explosion. In interpreting the insurance policies at issue, the District Court applied Louisiana law. Amerisure appealed an adverse judgment, contending that the District Court should have applied Texas law. On appeal, this Court noted that Amerisure had briefed only Louisiana law before the District Court and never asserted that Texas law should apply. Amerisure argued for the first time on appeal that the District Court should have "independently" analyzed Louisiana's choice-of-law rules and reached the conclusion that Texas law applied. This Court summarily rejected this argument, finding that Amerisure's failure to raise this issue before the District Court constituted a waiver for appellate review purposes.

Here, the Plan and Gerber never asserted to the District Court that some other coverage provision supplied an "additional" ground to deny Porter's claim. Instead of raising this "additional" defense, Gerber and the Plan chose to focus the attention of the District Court solely on the "travel to work" exclusion, which they

---

[16] *Glista* cited *Pitts* as illustrative of the cases finding that plan administrator waives defenses to coverage not articulated during the claims review process.

highlighted in bold eleven (11) times in their Reply brief.  CTA5 259.  Now, for the first time on appeal, they criticize the District Court for failing to "independently" address and interpret this other provision as a "stand-alone" bar to coverage.  As in *Fruge*, this Court should have no difficulty finding that Gerber and the Plan have waived this argument for appellate review purposes.

Even if the Court were to consider this "additional" ground for the first time on appeal, it is completely without merit.  The Plan and Gerber interpret this other provision as containing a "mandate" that coverage is "only" triggered when the insured person has a "planned" business trip and leaves her (a) place of residence or (b) place of regular employment for the purpose of going on such trip. They assert that coverage was never triggered under the Plan because Elizabeth did neither; that is, she did not leave her place of residence or place of regular employment for the purpose of going on a business trip.  *See* Appellants' Br. at pgs. 2, 34-5.   This after-the-fact Plan interpretation is fundamentally flawed and legally incorrect.

First of all, there is no specific mandate or exclusionary language contained in this provision which expressly limits coverage to trips originating "only" from the insured's place of residence or place or regular employment.  In their brief, the Plan and Gerber slip in the word "only" when discussing the scope of this provision in order to give a narrower construction.

Even if this narrow construction were reasonable (which it is not), this provision is still vague and ambiguous because the terms "place of residence" and "place of regular employment" are not defined in the Plan.  Gerber and the Plan do not share their interpretation of these undefined terms in their appellate brief.[17] However, they apparently interpret the term "place of residence" to mean Elizabeth's actual home and the term "place of regular employment" to mean the actual Lowe's store where she worked.   Even if these interpretations were reasonable, substantial evidence does not exist to support a denial on the basis of this provision.

Gerber and the Plan argue that when Elizabeth left the Lowe's store on February 24, her intention was to drive home, not to go on a business trip.  While this may be true, there is absolutely no evidence in the administrative record which pinpoints Elizabeth's exact location when she altered her route for the purpose of making a special trip to Lowe's to address the alarm situation.

In its denial letter and its decision on appeal, the Plan Administrator recited several facts that it had discovered during its investigation concerning Elizabeth's accident.   However, the Plan Administrator never mentioned any evidence

[17] Of course, had this issue been raised during the administrative process or before the District Court, Porter would have been entitled to conduct discovery to determine whether the interpretation of these terms was reasonable and consistently applied.  *See Robinson,* 443 F.3d at 396 n.5(citing *Vega v. Nat'l Life Ins. Co.,* 188 F.3d 287, 299 (5th Cir. 1999))(rejecting insurer's suggestion on appeal before this Court that the claim should be remanded back to the Plan Administrator so it could have "another opportunity to make a record.").

indicating: (a) when she received the alarm call; or (b) where she was located when she altered her route to travel back to Lowe's. Gerber and the Plan are essentially asking this Court to assume the existence of critical facts on appeal which the Plan Administrator did not develop as part of the administrative record.[18]

Moreover, the after-the-fact Plan interpretation offered by the Plan and Gerber is arbitrary and inconsistent with a fair reading of the Plan. Gerber concedes "that an insured person driving to [her] place of regular employment may be on a covered business trip as long as coverage for the business trip commenced in accordance with provisions of the Plan." Appellants' Br. at 35 n.6. Thus, the Plan and Gerber concede that coverage would have "commenced" if Elizabeth had fortuitously "touched home base" before driving to Lowe's to respond to the alarm call.

If this Court were to accept this arbitrary interpretation, then Elizabeth's coverage would hinge not on a uniform construction of the Plan but on completely fortuitous circumstances and random variables, such as whether she had a cell phone, when she actually received the alarm call, her speed, her travel route, the distance from her home, traffic congestion and weather conditions. Moreover, this interpretation would necessary exclude a broad class of employees from coverage

---

[18] Of course, had this issue been raised during the administrative process or before the District Court, Porter would have been entitled to conduct to discovery to determine whether the Plan's conclusions as to Elizabeth's whereabouts when she altered her route were rationally based on the facts and evidence. *See Robinson*, 443 F.3d at 396 n.5.

who may be called upon by their employer to take a business trip at a time when they are located somewhere other than their place of residence or their place of regular employment.

For example, assume that instead of receiving a call to respond to an alarm at the Lowe's store, Elizabeth received a call from her employer to immediately drive to a different Lowe's store location in Biloxi for business purposes. According to the Plan and Gerber, coverage would not commence for this "bonafide" business trip unless Elizabeth first touched "home base." In other words, Elizabeth would not be covered under the Plan unless she disobeyed her employer's directive and went home first. This simple example illustrates how the after-the-fact Plan interpretation offered by Gerber and the Plan is not only legally incorrect but also arbitrary and capricious.

### D.   The District Court's Computation of Prejudgment Interest Should be Affirmed

The District Court's original Judgment awarded Plan benefits to Porter in the amount of $181,830.37, plus prejudgment interest in an unspecified amount.[19] The District Court subsequently entered an Amended Judgment, calculating the amount of prejudgment interest to be $61,769.30 based upon Miss. Code Ann.§ 75-17-1, which establishes the legal rate of interest on contracts at eight percent (8%). The Plan and Gerber do not challenge the actual computation of prejudgment interest

---

[19] The Plan and Gerber do not challenge the computation of actual Plan benefits, and therefore, concede that the Judgment reflects the correct amount if affirmed.

but contend that the District Court erred in applying an interest rate of 8% because it is unreasonably high and results in a "windfall" to Porter.

Although ERISA does not expressly provide for prejudgment interest awards, such awards are permitted under 29 U.S.C. § 1132(a)(3)(B)(allowing "other appropriate equitable relief"). *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322 (8th Cir. 1995); *Cottrill v. Sparrow, Johnson & Ursillo*, 100 F.3d 220 (1st Cir. 1996); *Ford v. Uniroyal Pension Plan*, 154 F.3d 613 (6th Cir. 1998). Moreover, "an award of prejudgment interest under ERISA furthers the purposes of that statute by encouraging plan providers to settle disputes quickly and fairly, thereby avoiding the expense and difficulty of federal litigation." *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 984 n. 11 (5th Cir. 1991).

The Plan and Gerber acknowledge that it is within the District Court's discretion to set the amount of prejudgment interest in ERISA cases. As this Court confirmed in *Hansen*, because "ERISA is silent on the issue of prejudgment interest" . . . "it is appropriate for the district court to look to state law for guidance in determining the rate of interest." *Hansen*, 940 F.2d at 984. This is exactly what the District Court did in the instant case in looking to Miss. Code Ann. § 75-17-1 for guidance as to an appropriate rate of interest.

Without citing to any specific evidence, the Plan and Gerber argue that it was unfair for the District Court to assess prejudgment interest at a rate of 8% and that it should have instead applied the federal rate for post-judgment interest set

forth in 28 U.S.C. § 1961 (which they compute to be 1.25%). This is the same argument which this Court summarily rejected in *Hansen.*

In *Hansen*, the District Court awarded prejudgment interest to the prevailing plaintiff in an ERISA case based upon a Texas state statute which provided for prejudgment interest at rate of 10%.  On appeal, the defendant argued that the District Court should have applied "the rate set down in the [federal] postjudgment interest statute."  Citing its earlier decision in *United States, ex rel Canion v. Randall & Blake*, 817 F.2d 1188 (5th Cir. 1987),  which involved another federal statute that was silent as to prejudgment interest, this Court affirmed the District Court's computation based on Texas law.   This Court should likewise affirm the District Court's computation of prejudgment interest in the instant case.

### E.    Attorney's Fees and Costs should be Awarded to Porter

After analyzing the five (5) factors sets forth in *Schnexnayder v. Hartford Life & Accident Ins., Co.*, 600 F.3d 465, 471 (5th Cir. 2010), the District Court declined to award Porter attorney's fees and costs as part of the relief under ERISA.  Porter respectfully submits that the District Court abused its discretion in this regard and that attorney's fees and costs should be awarded in order to make him whole.

As to the factor pertaining to bad faith conduct, this Court should consider not only the actions of the Plan Administrator during the administrative process but also the actions of Gerber and the Plan in perpetuating and attempting to expand

this litigation, even to point of raising new defenses to coverage on appeal. It has now been five (5) years since Porter lost his wife and unborn child, and he has been embroiled in this dispute for most of this time. Had the Plan Administrator fairly considered the fact that Elizabeth was on a "special errand, a fact which Lowe's conveyed to it in 2008, then this claim would have been resolved years ago. However, this claim has dragged on to this point because the Plan Administrator chose to ignore this fact and applied a legally incorrect Plan interpretation so as to avoid paying benefits. Now, nearly five (5) years after the original denial, the Plan and Gerber are attempting to deny Porter's claim on an entirely new ground not previously raised.

Unless deterred by the prospect of substantial attorneys' fee awards, there is little incentive for plan fiduciaries to promptly and fairly resolve claims. In fact, the opposite true, since there is no disincentive to litigate claims decisions and appeal the rare adverse ruling. At the current rate, the post-judgment interest statute certainly not does provide any such deterrent. ERISA is intended to provide "equitable relief." Equity requires that Porter be made whole with an award of attorney fees and costs.

## CONCLUSION

For the foregoing reasons, this Court should affirm the District Court's decision to award Plan benefits and prejudgment interest to Porter. The District Court should reverse the District Court's decision to deny attorney's fees and costs and remand that discrete issue for further proceedings.

THIS the 21st day of March, 2013.

Respectfully submitted,

**JOSH PORTER,** *et al.*

By:    /s/     *W. Thomas McCraney, III*
        Attorney for Appellee/
        Cross Appellant

W. Thomas McCraney, III (MSB #10171)
Sean R. Guy (MSB #100362)
MCCRANEY MONTAGNET QUIN & NOBLE, PLLC
602 Steed Road, Suite 200
Ridgeland, MS 39157
Telephone: (601) 707-5725
Facsimile: (601) 510-2939

## CERTIFICATE OF SERVICE

I do hereby certify that the foregoing pleading was filed electronically through the Court's ECF system and that the same was served electronically on all parties enlisted to receive service electronically and separately served by email the following:

> Luther T. Munford, Esq.
> Thear J. Lemoine, Esq.
> PHELPS DUNBAR, LLP
> NorthCourt One, Suite 300
> 2304 19th Street
> Gulfport, Mississippi 39501
>
> Anna M. Martin, Esq.
> Joseph M. Rimac, Esq.
> RIMAC & MARTIN, PC
> 1051 Divisadero Street
> San Francisco, CA 94115

SO CERTIFIED, this the 21st day of March, 2013.


/s/ W. Thomas McCraney, III

## <u>CERTIFICATE OF COMPLIANCE WITH RULE32(a)</u>

This brief complies with the type-volume limitation of FED. R. APP. P. 32(1)(7)(B) because this brief contains 8070 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of FED R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2007 in Times New Roman fourteen (14) point font.

*/s/ W. Thomas McCraney, III*
Attorney for Appellee/Cross Appellant
March 21, 2013